## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ENVIRONMENTAL DEFENSE FUND**, <br> 257 Park Avenue South <br> New York, NY 10010 <br><br>      Plaintiff, <br><br>      vs. <br><br> **UNITED STATES ENVIRONMENTAL** <br> **PROTECTION AGENCY**, <br> 1200 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20460 <br><br>      Defendant. | **Case No.: 1:17-cv-2220** |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, the Environmental Defense Fund ("EDF"), alleges as follows:

### I.    INTRODUCTION

1.    This action is premised on violations of the Freedom of Information Act ("FOIA") 5 U.S.C. § 552, which allows an aggrieved party to seek relief when records are unlawfully withheld by a federal agency, and authorizes a reviewing court to enjoin the agency from withholding records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. § 552(a)(4)(B). EDF challenges the unlawful failure of Defendant, the United States Environmental Protection Agency ("EPA" or "Agency"), to respond to EDF's FOIA requests in the manner and within the time required by FOIA.

2.    In January 2017, EDF submitted a FOIA request to EPA seeking records relating to certain ethical matters involving EPA Administrator Edward Scott Pruitt. In March 2017, EDF

submitted a second FOIA request to EPA seeking records relating to the Agency's public

communications about scientific research and findings. In June 2017, EDF submitted a third

FOIA request to EPA seeking records related to the Administrator's and senior managers'

schedules. These requests were submitted as part of EDF's ongoing efforts to inform the public

about EPA activities affecting human health and the environment, and particularly issues of

ethical conduct and scientific integrity.

3.      The statutory 20-working-day deadline for providing determinations has lapsed

on all three of EDF's FOIA requests. EPA has not asserted—much less established—that

"unusual circumstances" justify extending the deadlines. 5 U.S.C. § 552(a)(6)(B).

4.      EPA has failed to comply with the statutory mandates and deadlines imposed by

FOIA through its failure to provide final determinations resolving EDF's FOIA requests within

the time required by law. EPA's delay in providing final determinations on EDF's FOIA requests

has thwarted EDF's efforts to timely receive current information in EPA's possession.

5.      EDF is harmed as a matter of law by EPA's violation of rights to which EDF is

statutorily entitled under FOIA. Moreover, EDF and its members are and will be substantially

harmed by EPA's failure to comply with FOIA because this failure directly impacts EDF's

ability to effectively engage in, provide public oversight of, and disseminate full, accurate, and

current information to the public regarding matters of significant public concern involving EPA.

The subject matter of the FOIA requests at issue is of great public interest as well as immediate

relevance to the interest of EDF's members and EDF's advocacy on their behalf.

6.      Accordingly, EDF seeks declaratory relief establishing that EPA has violated

FOIA. EDF also seeks injunctive relief directing EPA to promptly turn over the requested

material.

## II.    JURISDICTION AND VENUE

7.      This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), which provides that the district

court of the United States in the district in which the complainant resides, or has his principal

place of business, or in which the agency records are situated, or in the District of Columbia, has

jurisdiction to enjoin the agency from withholding agency records and to order the production of

any agency records improperly withheld from the complainant. This Court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331.

8.      Venue is likewise proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## III.    PARTIES

9.      EDF is a nonprofit corporation, organized under section 501(c)(3) of the Internal

Revenue Code. Established in 1967, EDF is one of the world's largest environmental

organizations, with more than two million members and supporters and a staff of 675 scientists,

economists, policy experts, and other professionals around the world. EDF seeks to solve some

of the most critical environmental problems facing humanity, including climate change,

pollution, and toxic chemical exposure, and to educate the public about these problems. Among

EDF's highest priorities are ensuring that EPA's limited budget resources are not misused, that

the Agency complies with pertinent ethics agreements and recusals, and that scientific integrity

and communication continue to be prioritized by the Agency. In support of these efforts, between

January and June of 2017, EDF submitted to EPA the FOIA requests at issue in this case.

10.      EPA is an agency within the meaning of 5 U.S.C. § 552(f). EPA's mission is to

protect human health and the environment by, among other things, ensuring that federal laws

protecting human health and the environment are implemented and enforced fairly and

3

effectively, and that national efforts to reduce environmental risk are based on the best available scientific information. In order to accomplish these objectives, EPA develops and enforces regulations, awards grants to state and tribal environmental programs and others, studies environmental issues, sponsors partnerships, and educates the public about issues pertaining to the environment. EPA has possession and control of the requested records and is responsible for fulfilling EDF's FOIA request.

## IV.   STATUTORY FRAMEWORK

11.    FOIA requires an agency to issue a final determination resolving an information request within twenty business days from the date of its receipt. 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a).

12.    FOIA allows an agency to extend its determination deadline by 10 business days when "unusual circumstances" exist and when the agency so notifies a requester in writing. 5 U.S.C. § 522(a)(6)(B); *see also* 40 C.F.R. § 2.104(d) (establishing basis for extension of determination deadline).

13.    In limited circumstances, FOIA allows an agency to impose an "unusual circumstances" decision extension beyond 10 business days if the agency provides notice and give the requesting party an opportunity to work with the agency to modify the request and arrange for an alternative time frame. 5 U.S.C. § 552(a)(6)(B)(ii). Under these circumstances, the agency must "make available its FOIA Public Liaison, who shall assist in the resolution of any disputes between the requester and the agency . . ." *Id.*

14.    A FOIA requester is generally required to exhaust administrative appeal remedies before seeking judicial redress. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003); *Oglesby v. Dep't of the Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990). However, if an agency fails

4

to make and communicate its "determination" whether to comply with a FOIA request within certain statutory timelines, the requester "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i). A "determination" need not be the full production of documents, but at a minimum the agency must inform the requester what documents it will produce and the exceptions it will claim in withholding documents. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n ("CREW")*, 711 F.3d 180, 184 (D.C. Cir. 2013).

## V.     FACTS

### A.     January 24, 2017 FOIA Request (EPA-HQ-2017-003087)

15.     Before being sworn in as EPA Administrator on February 17, 2017, Edward Scott Pruitt served as the Attorney General of Oklahoma for approximately six years. During his tenure as Oklahoma Attorney General, Mr. Pruitt repeatedly brought suit against EPA to oppose clean air and clean water safeguards. All but one of the suits Mr. Pruitt helped bring against EPA over such safeguards involved at least one company that had contributed to Mr. Pruitt's campaigns or an affiliated political action committee. Jeremy Venook, *The Trump Administration's Conflicts of Interest: A Crib Sheet*, THE ATLANTIC (Jan. 18, 2017), https://www.theatlantic.com/business/archive/2017/01/trumps-appointees-conflicts-of-interest-a-crib-sheet/512711/. *See also EME Homer City Generation, L.P. v. EPA*, No. 11-1301 (D.C. Cir.) (challenging the Cross State Air Pollution Rule); *White Stallion Energy Ctr., LLC v. EPA*, No. 12-1100 (D.C. Cir.) (challenging rule placing limits on mercury pollution); *Murray Energy Corp. v. EPA*, No. 16-1127 (D.C. Cir.) (challenging limits on mercury pollution a second time); *Murray Energy Corp. v. EPA*, No. 15-1385 (D.C. Cir.) (challenging EPA effort to reduce ozone pollution); *Walter Coke, Inc., v. EPA*, No. 15-1166 (D.C. Cir.) (challenging EPA rule limiting

pollution during power plant shutdowns or malfunctions); *Coalition for Responsible Regulation, Inc. v. EPA*, No. 09-1322 (D.C. Cir.) (challenging determination that greenhouse gas pollution endangers health and environment); *North Dakota v. EPA*, No. 15-1381 (D.C. Cir.) (challenging carbon pollution standards for new power plants).

16.     On December 8, 2016, President-Elect Donald J. Trump nominated Mr. Pruitt to serve as head of EPA.

17.     In a letter to EPA's Designated Ethics Official dated January 3, 2017, Mr. Pruitt described "steps that [he] will take to avoid any actual or apparent conflict of interest" if confirmed as Administrator. This letter included only minimal constraints on Mr. Pruitt's activities and was not in line with standard language included in Office of Government Ethics Guidance. *See* Letter from Noah Bookbinder, Exec. Dir., Citizens for Responsibility and Ethics in Washington, to Kevin S. Minoli, Principal Deputy General Counsel & Designated Agency Ethics Officer, EPA (Jan. 17, 2017) (*available at*

https://s3.amazonaws.com/storage.citizensforethics.org/wp-content/uploads/2017/01/17183250/Letter-to-EPA-ethics-counsel-re-Pruitt-FINAL.pdf).

18.     On January 12, 2017, several United States Senators sent a letter to the Office of Government Ethics highlighting what they saw as Mr. Pruitt's history of antagonism toward EPA, a history that involved conflicts of interest that could undermine his ability to execute his role impartially within the organization. Letter from Senators Thomas R. Carper, Benjamin L. Cardin, Jeffrey A. Merkley, Cory A. Booker, Tammy Duckworth, Sheldon Whitehouse, Bernard Sanders, Kirsten Gillibrand, and Edward J. Markey to Walter M. Shaub, Jr., Dir., U.S. Office of Gov't Ethics (Jan. 12, 2017) (*available at* http://www.politico.com/f/?id=00000159-9466-d7fb-a5df-fce78c260001).

19.     On February 17, 2017, Mr. Pruitt was confirmed as Administrator of EPA.

20.     Mr. Pruitt's efforts to invalidate EPA safeguards during his tenure as Oklahoma Attorney General, as well as his ties to the industries EPA oversees, raised questions regarding his ability to carry out his official duties objectively, impartially, and in compliance with federal ethics laws. *See, e.g.*, 5 C.F.R. § 2635.502(a)(2).

21.     In order to understand the development of Mr. Pruitt's ethics agreement, and to help ensure that Mr. Pruitt was acting in compliance with the legal and ethical requirements of his office, as well as with his own pledge to avoid any actual or apparent conflict of interest, on January 24, 2017, EDF electronically filed a FOIA request with EPA for five categories of records. In summary, EDF requested EPA records related to (1) the evaluation of Mr. Pruitt's actual or apparent conflicts of interest; (2) the development of the January 3, 2017 letter to EPA's Designated Ethics Official; (3) the assessment of Mr. Pruitt's impartiality on matters before the Agency; (4) correspondence between EPA and the U.S. Office of Government Ethics concerning ethical matters related to Mr. Pruitt; and (5) communication or correspondence between Mr. Pruitt and entities outside of EPA. EDF sought a fee waiver and expedited processing for this request. EDF also sent a courtesy hard copy of the request by U.S. mail.

22.     On January 26, 2017, EPA's National FOIA Officer electronically sent EDF a letter stating that EPA had determined that, with regard to the fee waiver, EDF's FOIA "request does not reach the minimum billable amount, so there are no charges associated in processing [EDF's] request." The same letter denied expedited processing for this FOIA request. The letter also provided a tracking number for the request, EPA-HQ-2017-003087, and stated that the request would be processed by the Office of General Counsel. On January 30, 2017, EDF

appealed the denial of expedited processing, but an EPA Assistant General Counsel denied the appeal on February 7, 2017.

23.     EPA's 20-working-day deadline for providing a determination on EDF's request lapsed on February 22, 2017. EDF made repeated follow-up inquiries to EPA, all of which were met with inaction.

24.     On March 7, 2017, having received no information about EPA's search for responsive records since submitting the request six weeks earlier, EDF Attorney Benjamin Levitan called the EPA FOIA Public Liaison seeking information about this request. EPA staff informed Mr. Levitan that FOIA requests pertaining to Mr. Pruitt's ethical matters were being handled by the Senior Counsel for Ethics in the Office of General Counsel ("Senior Counsel"), but did not provide any information pertaining specifically to EDF's request.

25.     On April 25, 2017, after receiving no information about this request for seven additional weeks, Mr. Levitan called the Director of EPA's FOIA Expert Assistance Team Office ("Director"). She confirmed that the Senior Counsel was handling elements (1) through (4) of EDF's request but stated that an Attorney-Advisor in the Office of the Executive Secretariat ("Attorney-Advisor") was handling element (5). She suggested that Mr. Levitan follow up with the Senior Counsel and Attorney-Advisor directly for updates regarding this FOIA request.

26.     On May 16, 2017, after receiving no information about this request for three additional weeks, Mr. Levitan called the Senior Counsel seeking an update. The Senior Counsel explained that she had delayed working on this and other ethics-related FOIA requests until after Mr. Pruitt completed his recusal statement. Since that statement was signed on May 4, 2017, she

was working on this request and suggested that Mr. Levitan contact her a week later for another update.

27.      On the same day, May 16, 2017, Mr. Levitan left a voice mail for the Attorney-Advisor seeking an update on this request. The Attorney-Advisor did not return the call.

28.      On May 26, 2017, Mr. Levitan called the Senior Counsel, who explained that EPA employees were in the process of collecting potentially responsive emails, which would likely take at least a month. Only after that process could the Senior Counsel begin reviewing the records.

29.      On the same day, May 26, 2017, Mr. Levitan called the Attorney-Advisor, who provided no information about EDF's request. Instead, he asked Mr. Levitan to send him the tracking number of the request by email so that he could look into the matter and follow up with EDF. Mr. Levitan sent the Attorney-Advisor an email containing the tracking number that day.

30.      Mr. Levitan called the Attorney-Advisor on June 1, 2017, and June 6, 2017, seeking an update about this request. Both times, Mr. Levitan left a voice mail and followed up by email. Mr. Levitan sent another email seeking an update on July 18, 2017. Despite this repeated outreach, EDF has not received any update about the status of EPA's response to element (5) since submitting the FOIA request more than seven months ago.

31.      On June 6, 2017, Mr. Levitan left a voice mail for the Senior Counsel seeking an update about this request. She did not return the call.

32.      Mr. Levitan called the Senior Counsel again on June 22, 2017. She explained that she was still waiting for EPA staff to collect potentially responsive records. On June 27, 2017, she left a voice mail for Mr. Levitan explaining that the records had been collected, but she declined to predict how long it would take her to access and review them.

33.     On July 18, 2017, Mr. Levitan called the Senior Counsel, who explained that she had just returned from vacation and could not provide an update about the status of EDF's request. In response to Mr. Levitan's question about when to call back for an update, she suggested, "later in the week."

34.     Mr. Levitan called the Senior Counsel again on July 20, 2017 and July 27, 2017, seeking an update about this request. Both times, Mr. Levitan left a voice mail, and the Senior Counsel did not respond.

35.     EDF has received no further communication from EPA about this FOIA request. As of the filing date of this complaint, EPA has not provided the determination required under the FOIA statute.

**B.     March 20, 2017 FOIA Request (EPA-HQ-2017-005099, EPA-HQ-2017-005587)**

36.     In December 2016, President-elect Donald Trump's transition team directed a list of 74 questions to the U.S. Department of Energy ("DOE"), asking agency officials to identify which employees and contractors had worked on forging an international climate pact as well as domestic efforts to cut the nation's carbon output. The questionnaire requested a list of those individuals who had taken part in international climate talks over the past five years and which programs within DOE are essential to meeting the goals of President Obama's Climate Action Plan. Steven Mufson and Juliet Eilperin, *Trump Transition Team for Energy Department Seeks Names of Employees Involved in Climate Meetings*, WASHINGTON POST (Dec. 9, 2016), https://www.washingtonpost.com/news/energy-environment/wp/2016/12/09/trump-transition-team-for-energy-department-seeks-names-of-employees-involved-in-climate-meetings/?utm_term=.f3d5ee98445a. The questionnaire raised concern that the Trump transition

team was trying to identify and target civil servants who, as part of their job responsibilities, had helped implement environmental policies under President Obama. *Id.*

37.     In January 2017, the Trump administration issued memos ordering employees of at least four agencies, including EPA, not to send out news releases or to create social media posts, blog entries or official website content, and to consult with senior officials before speaking to the news media. Coral Davenport, *Federal Agencies Told to Halt External Communications*, N.Y. TIMES (Jan. 25, 2017), https://www.nytimes.com/2017/01/25/us/politics/some-agencies-told-to-halt-communications-as-trump-administration-moves-in.html. The memo issued to EPA also warned employees scheduled to speak at public events in the following weeks that they were required to alert President Trump's team of temporary political appointees before doing so. Andrew Restuccia, Alex Guillen, and Nancy Cook, *Information Lockdown Hits Trump's Federal Agencies*, POLITICO (Jan. 25, 2017), http://www.politico.com/story/2017/01/federal-agencies-trump-information-lockdown-234122.

38.     In order to safeguard scientific integrity, ensure the free flow of pertinent information, and support the ability of all Americans to access accurate information related to human health and environmental risks, on March 20, 2017, EDF electronically filed a FOIA request with EPA for, in relevant part: (1) "all directives and guidance to Agency scientific staff that relate to public communication about scientific research or findings," and (2) "all questionnaires or other solicitations of information sent to Agency scientific staff that relate to (i) past, current, or prospective public communication of scientific research or findings, and (ii) attendance at or participation in past, current, or prospective public events." The request contained a third element to which EPA responded on April 6, 2017, and which is not covered by this complaint. EDF sought a fee waiver and expedited processing for this request. EDF also

filed a courtesy hard copy of the request by U.S. mail. As described below, EPA failed to lawfully respond to items (1) and (2) of this three-part request.

39.     On March 30, 2017, EPA's National FOIA Officer electronically sent EDF a letter stating that, with regard to the fee waiver, EPA had determined that EDF's FOIA "request does not reach a billable amount." The same letter denied expedited processing for this FOIA request. The letter also provided a tracking number for the request, EPA-HQ-2017-005099, and stated that the Office of the Administrator would respond to the request.

40.     On April 6, 2017, the National FOIA Officer sent EDF a letter that comprised EPA's final response to element (3) of the FOIA request. In light of this letter, EDF is excluding element (3) from the scope of this complaint. The letter referenced a different tracking number, EPA-HQ-2017-005587, which EPA had assigned to the courtesy hard copy of EDF's request.

41.     On April 12, 2017, the National FOIA Officer sent EDF a letter pertaining to the courtesy hard copy of EDF's request (EPA-HQ-2017-005587). This letter granted both a fee waiver and expedited processing and stated that EPA's Office of Research and Development would respond to the request.

42.     EPA's 20-working-day deadline for providing a determination on EDF's request lapsed on April 17, 2017.

43.     On April 25, 2017, EDF Attorney Benjamin Levitan called the Director of EPA's FOIA Expert Assistance Team Office ("Director"). She informed Mr. Levitan that an Attorney-Advisor in the Office of the Executive Secretariat ("Attorney-Advisor"), was handling this request. The Director suggested that Mr. Levitan follow up with the Attorney-Advisor directly for updates.

44.     On May 16, 2017, having received no information about EPA's search for responsive records since submitting the request eight weeks earlier, Mr. Levitan left a voice mail for the Attorney-Advisor seeking an update. The Attorney-Advisor did not return the call.

45.     On May 26, 2017, Mr. Levitan called the Attorney-Advisor, who provided no information about EDF's request. Instead, the Attorney-Advisor asked Mr. Levitan to send him the tracking number of the request by email so that he could look into the matter and follow up with EDF. Mr. Levitan sent an email containing the tracking number that day.

46.     Mr. Levitan called the Attorney-Advisor on June 1, 2017, and June 6, 2017, seeking an update about this request. Both times, Mr. Levitan left a voice mail and followed up by email. Mr. Levitan sent another email seeking an update on July 18, 2017.

47.     Despite this repeated outreach, EDF has not received any update about the status of EPA's response to elements (1) and (2) since submitting the FOIA request more than six months ago. EDF has received no further communication from EPA about this FOIA request. As of the filing date of this complaint, EPA has not provided the determination required under the FOIA statute.

### C.     June 20, 2017 FOIA Request (EPA-HQ-2017-008622)

48.      Since being sworn in, Administrator Pruitt has terminated a long-standing bipartisan practice of publicly posting his appointments calendar and that of agency senior officials. Coral Davenport and Eric Lipton, *Scott Pruitt Is Carrying Out His E.P.A. Agenda in Secret, Critics Say*, N.Y. TIMES (Aug. 11, 2017), https://www.nytimes.com/2017/08/11/us/politics/scott-pruitt-epa.html. Additionally, he has not answered calendar-related oversight questions from lawmakers on Capitol Hill, according to the Senators who posed the questions. *Id*. As a result, information about the activities of the Administrator and his senior leadership—

13

information that historically was released as a matter of course, and plainly is a public record—
has generally been gleaned only through intermittent, piecemeal information shared with the
press or months after the fact through FOIA requests. Possibly the most relevant information
available—a 3-month tranche of Mr. Pruitt's calendar, released in response to a FOIA request—
still includes well over one hundred redacted calendar entries. *Detailed Pruitt Calendar
February to May*, N.Y. TIMES (Oct. 3, 2017),

https://www.documentcloud.org/documents/4064980-Pruitt-Sked-and-McCarthy-Sked.html.

49.     Administrator Pruitt's lack of transparency about his calendar and the schedules
of his senior leadership has raised serious questions about what activities EPA's leadership is
undertaking during the course of their work as well as what entities are meeting with EPA
leadership and influencing key decisions.

50.     As just one example, several months into Administrator Pruitt's tenure, it was
revealed that on March 22, 2017, he had dinner at the Trump International Hotel in Washington
with 45 members of the board of directors of the American Petroleum Institute, a body composed
largely of chief executive officers of the oil and gas industry. At the time, oil and gas companies
were pushing EPA to roll back a set of rules on methane leaks from drilling wells. Coral
Davenport, *Counseled by Industry, Not Staff, E.P.A. Chief Is Off to a Blazing Start*, N.Y. TIMES
(July 2, 2017), https://www.nytimes.com/2017/07/01/us/politics/trump-epa-chief-pruitt-
regulations-climate-change.html.

51.     In order to ensure that crucial information about Administrator Pruitt's and senior
manager's activities was accessible to the public, on June 20, 2017, EDF electronically filed a
FOIA request with EPA for "all records of EPA produced, modified, or transmitted since
February 17, 2017 that are related to the Administrator's and senior managers' schedules,

including: calendars, schedules, itineraries, logs of daily activities and travel, and records of in-person, telephonic or electronic meetings, including lists of meeting attendees." EDF sought a fee waiver and expedited processing for this request. EDF also filed a courtesy hard copy of the request by U.S. mail. As described below, EPA failed to lawfully respond to this request.

52.     On July 6, 2017, EPA's National FOIA Officer electronically sent EDF a letter (dated July 7) granting both a fee waiver and expedited processing for this request. The letter also provided a tracking number for the request, EPA-HQ-2017-008622, and stated that the Office of the Administrator would respond.

53.     On July 13, 2017, EDF Attorney Martha Roberts called EPA FOIA Public Liaison for an update about this request. EPA staff referred Ms. Roberts to the Attorney-Advisor in EPA's Office of the Executive Secretariat ("Attorney-Advisor") who was handling this request.

54.     On the same day, July 13, 2017, Ms. Roberts called the Attorney-Advisor, who referred Ms. Roberts to partially responsive records that EPA had disclosed in response to a different FOIA request. The Attorney-Advisor also requested a clarification of EDF's request.

55.     On July 20, 2017, Ms. Roberts provided the clarification that the Attorney-Advisor had requested. Specifically, Ms. Roberts provided a date range for responsive records, clarified the types of records requested, clarified the specific EPA personnel whose records should be searched, and excluded the publicly available records to which the Attorney-Advisor referred Ms. Roberts during their phone call.

56.     Even assuming *arguendo* that EPA's 20-working-day deadline to provide a determination on EDF's request was tolled while EPA awaited Ms. Roberts's clarification, *see* 5 U.S.C. § 552(a)(6)(A)(ii)(I), the deadline lapsed on July 26, 2017.

57.     On September 20, 2017, Mr. Levitan received a call from a staff member at EPA who advised that an additional portion of Administrator Pruitt's calendar had been released in response to a different FOIA request, and seeking clarification of how or whether that affected EDF's request. Ms. Roberts sent an email to the staff member on October 4, 2017, seeking an opportunity to explain that this release addressed only a limited portion of EDF's request.

58.     EDF has received no further communication from any EPA employee regarding this request.

## VI.     CAUSES OF ACTION

### COUNT I
**(Failure to Reply to EDF's January 24, 2017 FOIA Request Within Statutory Deadlines)**

59.     Each of the foregoing paragraphs is incorporated by reference as if fully set forth herein.

60.     EDF, through its FOIA request dated January 24, 2017, properly asked for records within EPA's control.

61.     EPA has neither produced any records to EDF in response to its FOIA request, nor made any explicit and justified claims of statutory exemption. Furthermore, EPA has not sought to extend its determination deadline pursuant to FOIA's "unusual circumstances" provision. 5 U.S.C. § 522(a)(6)(B).

62.     EDF has exhausted the applicable administrative remedies with respect to EPA's failure to make a final determination regarding EDF's request within the determination deadlines imposed by FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), (B).

63.     Accordingly, EDF is entitled to injunctive and declaratory relief with respect to the release and disclosure of the records requested in EDF's FOIA request.

## COUNT II
**(Failure to Reply to EDF's March 20, 2017 FOIA Request Within Statutory Deadlines)**

64.     Each of the foregoing paragraphs is incorporated by reference as if fully set forth herein.

65.     EDF, through its FOIA request dated March 20, 2017, properly asked for records within EPA's control.

66.     EPA has neither produced any records to EDF in response to the relevant portions of its FOIA request, nor made any explicit and justified claims of statutory exemption. Furthermore, EPA has not sought to extend its determination deadline pursuant to FOIA's "unusual circumstances" provision. 5 U.S.C. § 522(a)(6)(B).

67.     EDF has exhausted the applicable administrative remedies with respect to EPA's failure to make a final determination regarding EDF's request within the determination deadlines imposed by FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), (B).

68.     Accordingly, EDF is entitled to injunctive and declaratory relief with respect to the release and disclosure of the records requested in EDF's FOIA request.

## COUNT III
**(Failure to Reply to EDF's June 20, 2017 FOIA Request Within Statutory Deadlines)**

69.     Each of the foregoing paragraphs is incorporated by reference as if fully set forth herein.

70.     EDF, through its FOIA request dated June 20, 2017, properly asked for records within EPA's control.

71.     EPA has released only a limited portion of records to EDF in response to its FOIA request, and has not made any explicit and justified claims of statutory exemption.

Furthermore, Defendant has not sought to extend its determination deadline pursuant to FOIA's "unusual circumstances" provision. 5 U.S.C. § 522(a)(6)(B).

72.     EDF has exhausted the applicable administrative remedies with respect to EPA's failure to make a final determination regarding EDF's request within the determination deadlines imposed by FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), (B).

73.     Accordingly, EDF is entitled to injunctive and declaratory relief with respect to the release and disclosure of the records requested in EDF's FOIA request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Declare Defendant's failure to timely make a determination on EDF's January 24, 2017, March 20, 2017, and June 20, 2017 FOIA requests unlawful under 5 U.S.C. § 552(a)(6)(A)(i);

B.  Order Defendant to process and release immediately all records responsive to EDF's January 24, 2017, March 20, 2017, and June 20, 2017 FOIA requests at no cost to EDF;

C.  Retain jurisdiction of this action to ensure the processing of EDF's FOIA request and that no agency records are wrongfully withheld;

D.  Award EDF its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.  Grant such other and further relief as the Court may deem just and proper.]

Dated:                                          Respectfully submitted,

                              By:    _/s/ Hassan Zavareei_____
                                     Hassan A. Zavareei (456161)
                                     *hzavareei@tzlegal.com*
                                     **TYCKO & ZAVAREEI LLP**
                                     1828 L Street, NW, Suite 1000
                                     Washington, DC 20036
                                     Telephone: (202) 973-0900
                                     Facsimile: (202) 973-0950

                                     *Counsel for Plaintiff Environmental
                                     Defense Fund*