## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ENVIRONMENTAL DEFENSE FUND,               )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )        Case No. 17-cv-02220 (APM)
                                          )
UNITED STATES ENVIRONMENTAL               )
PROTECTION AGENCY,                        )
                                          )
        Defendant.                        )
_____   )

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

In the first half of 2017, Plaintiff Environmental Defense Fund ("EDF") submitted three

Freedom of Information Act ("FOIA") requests seeking records from Defendant

U.S. Environmental Protection Agency ("EPA") relating to (1) ethics matters involving then-EPA

Administrator Scott Pruitt, (2) the agency's public communications about certain scientific

research, and (3) the schedules of the Administrator and senior managers.  EPA neither provided

a determination on these requests within the 20-working-day deadline set forth in FOIA nor

produced any responsive documents, and so in October 2017, EDF filed this lawsuit, asking the

court to compel EPA to produce immediately all records responsive to its three FOIA requests.

After nearly 18 months of court-overseen document processing and an unfinished round of

summary judgment briefing, the parties ultimately resolved their disputes concerning records

production with the assistance of a mediator but left unresolved the issue of attorney's fees and

costs.  EDF now asserts that it is both eligible for and entitled to attorney's fees under FOIA.  The

court agrees, subject to certain caveats regarding the amount of fees.  For the reasons set forth below, EDF's motion is granted.

## II.    BACKGROUND

The court assumes the parties' familiarity with the facts of this case and so recites them only as relevant to the instant motion.  This litigation began when EDF filed its complaint seeking declaratory and injunctive relief for EPA's failure to respond to three FOIA requests in the manner and time required by FOIA.  *See* Compl., ECF No. 1 [hereinafter Compl.], ¶ 1.  Those FOIA requests came as part of an unprecedented volume of FOIA requests to the agency soon after the appointment of Scott Pruitt as the EPA Administrator.  *See* Def.'s Opp'n to Pl.'s Mot., ECF No. 51 [hereinafter Def.'s Opp'n], at 3.

After the agency filed its answer to the complaint, the court held a status conference in which it imposed a 750-records-per-month processing rate on EPA.  Hr'g Tr., ECF No. 10 [hereinafter Hr'g Tr.], at 17.  After about a year of document processing and productions pursuant to the court's order, EPA reported that it had completed production, and the parties proposed a summary judgment briefing schedule to litigate the agency's withholdings.  Joint Status Report & Proposed Briefing Schedule, ECF No. 18.  But after the parties' cross-motions and oppositions were filed, EDF and EPA filed a joint motion to stay the briefing schedule because EPA had discovered that it had inadvertently produced incomplete records.  Joint Mot. to Stay Briefing Schedule, ECF No. 28.  The court granted a stay, and a little over a year later, the parties reported that they had resolved all remaining disputes through mediation—except for the issue of fees.  Joint Status Report & Proposed Briefing Schedule, ECF No. 42.  EDF's motion for fees is now before the court.  *See* Pl.'s Mot. for Attys' Fees & Costs, ECF No. 43 [hereinafter Pl.'s Mot.].

### III.    LEGAL STANDARD

Under FOIA, a court "may" award "reasonable" attorney's fees to a requester who has "substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  Determining whether to grant a fee award involves a two-part inquiry into the requester's eligibility and entitlement to such an award. *See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C Cir. 1981).  A requester is deemed "eligible" for a fee award if it has "substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i). A requester "substantially prevails" if it has "obtained relief" through either (1) a "judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the [requester's] claim is not insubstantial."  *Id.* § 552(a)(4)(E)(ii).

If the requester is deemed eligible for fees, it still must establish entitlement to an award. That inquiry requires consideration of four factors:  "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016) (internal quotation marks omitted).  "No one factor is dispositive," except that "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure."  *Davy v. CIA* (*Davy II*), 550 F.3d 1155, 1159 (D.C. Cir. 2008).

### IV.    DISCUSSION

EPA contests EDF's petition for fees at nearly every point of the analysis: EPA challenges EDF's eligibility for fees; its entitlement to fees; and, for several different reasons, the reasonableness of the fee award it requests.  The court, however, finds that EDF is both eligible for and entitled to fees—albeit in an adjusted amount.

### A.    EDF's Eligibility for Fees

EDF argues that it has "substantially prevailed" under both definitions of that term and so is eligible for fees; EPA challenges EDF's eligibility under both theories.  EDF has the better of both arguments.

### 1.    Judicial-Order Theory

The court first considers whether EDF is eligible for fees because it "obtained relief" through a "judicial order."  5 U.S.C. § 552(a)(4)(E)(i).  During an April 2018 hearing, the court set a schedule for EPA's review of responsive documents: it required EPA to process 750 documents each month, including "searches and . . . production" on a rolling basis.  *See* Hr'g Tr. at 17–20; *id.* at 20 (court noting that two months after the hearing, the agency "should at least be two productions in").  EDF argues that, as a result, "EPA disclosed records in direct response to . . . [the] []court-levied production schedule[], thereby establishing EDF's status as substantially prevailing . . . on that basis."  Pl.'s Mot., Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot., ECF No. 43-1 [hereinafter Pl.'s Mem.], at 13.  EPA counters that this does not count as a "judicial order" in the relevant sense because, unlike the cases EDF cites in support of its argument, the court here did not establish dates certain by which the agency was required to produce documents.  Def.'s Opp'n at 13.

The D.C. Circuit has held orders requiring agencies to produce records by a particular date sufficient to "render the plaintiffs who secure them prevailing parties eligible for attorneys' fees," *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 369 (D.C. Cir. 2008), because once the court has "require[d] the agency to release documents, the legal relationship between the parties changes," *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 197 (D.C. Cir. 2007).  While it may not be precisely on all fours with this case, *Davy v. CIA* is instructive here.  In that case, the plaintiff

4

sought expedited processing of documents responsive to his FOIA request.  *Davy v. CIA* (*Davy I*), 456 F.3d 162 (D.C. Cir. 2006).  The trial court issued an order approving a joint stipulation by the parties that the agency would provide the plaintiff all responsive documents by certain dates.  *Id.* at 164.  The D.C. Circuit concluded that the plaintiff had substantially prevailed based on the court's order for two reasons.  First, the order "changed the legal relationship between the plaintiff and the defendant."  *Id.* at 165 (internal quotation marks and brackets omitted).  Before the court issued the relevant order, the agency "was not under any judicial direction to produce documents by specific dates."  *Id.* at 166.  The order "changed that by requiring the [a]gency to produce all responsive records by the specified dates."  *Id.* (internal quotation marks omitted).  At that point, the legal relationship between the parties transformed because "timely production of nonexempt documents . . . could no longer be described as a voluntary change in the defendant's conduct." *Id.* (internal quotation marks omitted).  The second reason the court concluded the plaintiff had substantially prevailed was that he "was awarded some relief on the merits of his claim."  *Id.* at 165.  While the agency in that case argued that the order "requir[ed] nothing more than a search for documents," the court found that "[t]he order provide[d] Davy with the precise relief his complaint sought—making the requested information promptly available."  *Id.* (internal quotation marks and alteration omitted).

    The salient features of *Davy I* are present here, too.  First, the court's order setting a processing schedule and requiring the agency to conduct searches and make rolling productions gave EDF some of "the precise relief [its] complaint sought."  *Id.* at 165.  EDF's complaint requested an order from the court requiring EPA "to process and release immediately all records responsive to" EDF's three FOIA requests.  Compl. at 18.  The parties disputed what the rate of processing of responsive documents should be, and ultimately, the court granted EDF greater relief

than what the agency voluntarily offered: EPA suggested a 500-document-per-month processing rate, and the court ultimately ordered it to process 750 records per month and make productions on a rolling basis.  EDF thus received some of the relief it asked for.

Second, the court's order changed the legal relationship between the parties.  Before the April 2018 hearing, the agency was not on any kind of timetable for processing or producing documents.  The court's order may not have formally "set any deadlines," Hr'g Tr. at 19, yet it functionally required EPA to conduct searches, process all responsive documents, and begin to produce documents on a rolling basis, meeting certain benchmarks.  *See id.* at 17–19; *id.* at 20 (making clear that EPA must make at least one production a month).  Because of the court's order, the completion of production—although admittedly not mandated by a date certain—accelerated, and the agency was obligated to work at a court-designated rate.  Indeed, as EDF points out, EPA treated the court-ordered processing rate as such, seeking consent for an extension and notifying the court when it did not think it would meet its monthly benchmark.  Pl.'s Reply in Supp. of Pl.'s Mot., ECF No. 52 [hereinafter Pl.'s Reply], at 4; *see* Joint Status Report, ECF No. 12, at 7 ("Pursuant to the schedule set on April 9, 2018, EPA has processed over 750 records for each of the four subsequent productions."); Notice Regarding Changes to Produc. Schedule, ECF No. 14, at 1 ("Pursuant to the schedule currently in place, Defendant had been reviewing at least 750 records per month and releasing the responsive, non-exempt records at the beginning of each month.  Defendant, however, . . . requested, and Plaintiff agreed, to an extension of time . . . for Defendant to complete the next release of records.").   And of course, as in *Davy I*, "[i]f the [a]gency failed to comply with the order, it faced the sanction of contempt."  456 F.3d at 166.  Thus, while the court's order here was different in its particulars from the order in *Davy I*, its effect

of providing EDF some of the relief it requested and altering the legal relationship between the parties was in those respects the same.  EDF therefore substantially prevailed in obtaining relief.

### 2.    Catalyst Theory

The second way a FOIA requester can substantially prevail—by showing a "voluntary or unilateral change in position by the agency," 5 U.S.C. § 552(a)(4)(E)(ii)—is often referred to as the "catalyst theory."  *See Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020). Under that theory, the relevant question "is whether the institution and prosecution of the litigation caused the agency to release the documents obtained."  *Id.* at 97 (cleaned up).  Establishing causation requires more than a sequential showing of the mere filing of a complaint and the subsequent release of records.  *See id.*  Rather, the requester bears the burden of demonstrating "that it is more probable than not that the government would not have performed the desired act absent the lawsuit."  *Id.* (quoting *Pub. Citizen Health Res. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).  EDF argues that it also substantially prevailed under this theory, a position that EPA contests.  Again, the court agrees with EDF that, in the alternative, it prevails under the catalyst theory.

The D.C. Circuit has made clear that if "an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit."  *Church of Scientology*, 653 F.2d at 588  (internal quotation marks omitted); *see also Grand Canyon Tr. v. Zinke*, 311 F. Supp. 3d 381, 389 (D.D.C. 2018) ("When disclosure is triggered by events unrelated to the pending lawsuit, the causal nexus is missing and the plaintiff cannot be deemed a 'prevailing party.'").  But an agency cannot simply cite administrative burdens and thereby automatically avoid paying fees.  "[C]ourts must look at the circumstances surrounding disclosure" to determine

7

whether there is a "causal nexus" between the commencement of the lawsuit and an agency's disclosures.  *Grand Canyon Tr.*, 311 F. Supp. 3d at 389 (internal quotation marks omitted).  And in the right circumstances, a court may find that, notwithstanding the presence of administrative delays and burdens, "the threat of an adverse court order" was in fact the reason the agency responded or accelerated its response to the complainant's FOIA request.  *Church of Scientology*, 653 F.2d at 588.

Here, EPA points to an "unprecedented" increase in FOIA requests and other "exceptional circumstances" as the cause for its failure to begin processing documents before the litigation started.  Def.'s Opp'n at 14 ("EPA was faced with an unprecedented increase in FOIA requests and other extraordinary circumstances at the time of Plaintiff's three requests, which combined to delay their administrative processing; the institution of litigation did not influence the processing.");  *id.* at 18 (citing *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)).  The relevant offices, EPA says, were under-resourced amid a presidential transition.  *Id.* at 19; Def.'s Opp'n, Decl. of Brian T. Hope, ECF No. 51-3, ¶¶ 6–10; Def.'s Opp'n, Decl. of Justina Fugh, ECF No. 51-7, ¶¶ 5–7.  These administrative delays and burdens were paired, EPA argues, with due diligence on its part:  EPA communicated with EDF numerous times about its three requests before the suit was filed, requested clarification of its requests, and even produced records responsive to two of the three FOIA requests before the initiation of the lawsuit.

EDF's account of the lead-up to litigation paints a different picture of the extent of EPA's diligence.  First, EPA missed the statutory 20-day determination deadline for all three FOIA requests.  Pl.'s Mot., Decl. of Benjamin Levitan, ECF No. 43-3 [hereinafter Second Levitan Decl.], ¶ 10.  Second, the agency's initial communications with EDF about its requests were sporadic and nonsubstantive—the agency never substantively responded by providing records or giving a reason

for refusing to do so.  *Id.*; Pl.'s Cross-Mot. for Summ. J. & Opp'n to Def.'s Mot. for Summ. J.,

ECF No. 26 [hereinafter Pl.'s Cross-Mot. and Opp'n], Decl. of Benjamin Levitan, ECF No. 26-4

[hereinafter First Levitan Decl.], ¶ 12.   Third, EPA did not really generate records responsive to

EDF's FOIA requests.  Rather, for one of the FOIA requests, EPA sent EDF a link to FOIAonline

with advice to search "FOIA"; the documents EPA indicated that search would yield were not

related to what EDF had requested.  Pl.'s Reply at 11; Pl.'s Reply, Ex. 2, ECF No. 52-2, at 1.  And

on another FOIA request, EPA referred EDF to locations where documents that partially responded

to EDF's request had been released in response to different FOIA requests (made by other

requesters).   Pl.'s Reply at 8.   Fourth, EPA does not appear to have followed through on its

attempts to clarify EDF's requests upon receiving EDF's responses. *See id.* at 10–11.  Ultimately,

it was only after this lawsuit was filed and the court compelled EPA to process EDF's FOIA

requests that the agency began to do so.  Based on these circumstances, the court finds that "it is

more probable than not that the government would not have" begun to process EDF's FOIA

requests "absent the lawsuit."  *Grand Canyon Tr.*, 947 F.3d at 95 (internal quotation marks

omitted).

EPA cites *Environmental Integrity Project v. EPA* as instructive, but there is a crucial

difference between that case and this one: in that case, the court found that "EPA exercised due

diligence to ensure the request was processed" by "conduct[ing] a search for responsive documents

before [the plaintiff] filed the complaint" and engaged in a "diligent ongoing process that began

before the initiation of the lawsuit."  316 F. Supp. 3d 320, 328 (D.D.C. 2018).  The same cannot

be said of EPA in response to EDF's three FOIA requests.  While EPA may have engaged in some

communication with EDF as to its three requests before the filing of this lawsuit, its

communications were nonsubstantive in nature, they were sporadic, and they cut off completely

before EDF filed this action.  Second Levitan Decl. ¶ 10; First Levitan Decl. ¶ 12.  The record reflects no genuine production of responsive documents prior to the initiation of the litigation.  If EPA's pre-lawsuit communications to EDF here qualified as "due diligence" for purposes of the catalyst inquiry, then an agency could always avoid paying fees by providing occasional nonsubstantive updates without ever rendering a determination on a FOIA request, offering any indication whether it will process the request, or generating any responsive records.

Also relevant, EPA did not acknowledge any legal obligation to produce responsive records before the litigation commenced.  *See Sierra Club v. EPA*, No. 19-cv-3018 (APM) (D.D.C.), ECF No. 30, at 4 (considering the agency's change in litigation position as to whether it would be producing responsive records between the answer and subsequent status reports).  EPA never provided a determination on EDF's FOIA requests, and as noted elsewhere, it never indicated in its pre-lawsuit communications that it would begin producing responsive records.  Its answer contained no such indication, either.  *See generally* Answer, ECF No. 6.  It was only after the litigation commenced that EPA finally indicated it would process and produce responsive records.  *See, e.g.*, Joint Status Report, ECF No. 11.  That is a change in position by the agency, and it was catalyzed by the commencement of the lawsuit.  In that sense, this case is distinguishable from *Harvey v. Lynch*, 178 F. Supp. 3d 5 (D.D.C. 2016), which EPA cites for the proposition that where "documents [are] released after the complaint was filed, the release [does] not constitute a voluntary or unilateral change in agency position when the delay was the result of the administrative process."  Def.'s Opp'n at 19.  In that case, the record ultimately bore out that the agency had, before the commencement of the lawsuit, "initiated a search for responsive records," "processed records obtained in this search," and "submitted them for release" before the plaintiff

filed suit.  *Harvey*, 178 F. Supp. 3d at 7.  Here, the record does not contain such facts.  Under either

theory of "substantially prevailing," therefore, EDF has demonstrated that it is eligible for fees.

### B.    EDF's Entitlement to Fees

Now that the court has determined that EDF is eligible for fees, the question remains

whether it is entitled to fees.  The court must consider four factors in that evaluation:  "(1) the

public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of

the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the

requested documents."  *Morley*, 810 F.3d at 842 (internal quotation marks omitted).  EPA does not

contest the first three factors.  It focuses exclusively on the fourth, which EPA presents as a

"superfactor" of sorts.  *See* Def.'s Opp'n at 19–23; *id.* at 23 ("[T]his Court in its discretion may

allow the fourth factor to predominate and thereby deny fees.").  It contends that its "positions

throughout the response to the requests were reasonable."  Def.'s Opp'n at 22.

As a threshold matter, the court notes that mere reasonableness of an agency's position

does not foreclose the award of fees.  Only "[i]f the Government's position is correct as a matter

of law" will that be "dispositive" on the question of fees.  *Davy II*, 550 F.3d at 1162 (internal

quotation marks omitted).  If, on the other hand, "the Government's position is founded on a

colorable basis in law, that will be weighed along with other relevant considerations in the

entitlement calculus."  *Id.* (internal quotation marks omitted).

Here, EPA does not contend that it is "correct as a matter of law," only that its actions were

"reasonable" and, specifically, that the agency "had a reasonable basis in law" for its withholdings.

Def.'s Opp'n at 22; *see also Dorsen v. SEC*, 15 F. Supp. 3d 112, 123 (D.D.C. 2014) (requiring "a

reasonable basis in law" for the agency's opposition to disclosure).  "Courts in this district have

held that administrative delay and FOIA backlog do not form a 'reasonable basis in law' for

withholding documents" because the purpose of the fourth factor—to "incentivize the government to promptly turn over[,] before litigation is required[,] any documents that it ought not withhold"—"would not be served if it were reasonable for agencies to withhold documents for indeterminant periods of time because they have too many FOIA requests and too few FOIA staff members." *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 319 (D.D.C. 2020) (alteration omitted) (internal quotation marks omitted). The court acknowledges the administrative burdens EPA faced, but those burdens do not justify the withholding. The fourth factor also involves an inquiry into "whether the agency had . . . been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Dorsen*, 15 F. Supp. 3d at 121 (internal quotation marks omitted). EPA's conduct before the start of this litigation evinces listlessness, not reasonableness. It is therefore the type of conduct Congress thought warranted an award of attorney's fees. *See Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977) (summarizing Congress' intent with respect to the fourth criterion as to "ordinarily award [fees] if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester").

The only legal position EPA references in its opposition is the position it took on FOIA exemptions to justify withholding at the summary judgment stage. *See* Def.'s Opp'n at 21–22. That legal position only applied to a whittled-down subset of the documents EDF initially requested and EPA initially declined to produce, as the parties negotiated narrowed disputed grounds for purposes of summary judgment. Of course, the court never reached the merits of those exemptions. They were never litigated because the summary judgment briefing schedule was cut short. And EPA has not offered a full-throated defense of its legal position in its opposition. *See* Def.'s Opp'n at 19–23.

The fourth factor therefore does not support EPA's position, and even if it were neutral, the other three factors would outweigh it.  *See Elec. Priv. Info. Ctr. v. FBI*, 72 F. Supp. 3d 338, 349 (D.D.C. 2014) (concluding that "given that the first three factors favor an award of fees and the fourth is neutral," plaintiff was entitled to fees).  Again, EPA does not contest the first three factors, so the court only briefly discusses them here:  The first factor assesses "the significance of the contribution that the released information makes to the fund of public knowledge." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 712 (D.C. Cir. 2014).  The records obtained by EDF through this action promote transparency and public oversight of agency matters of public importance.  As to the second and third factors, EDF derived little to no commercial benefit, and it had no other private incentive to obtain the records.  *See Kwoka v. IRS*, 989 F.3d 1058, 1064 (D.C. Cir. 2021) (considering the second and third factors together and assessing "whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees" (internal quotation marks omitted) (quoting *Davy II*, 550 F.3d at 1160)).  In determining whether EDF is entitled to fees, the court must weigh all four factors.  Thus, even if the government's position had some degree of reasonableness, given the strength of the other three factors in favor of a fee award, EDF would prevail.  EDF is entitled to fees.

## C. Reasonableness of EDF's Requested Fees

The court may award "reasonable" fees under FOIA.  5 U.S.C. § 552(a)(4)(E)(i).  Courts have "broad discretion" to determine an appropriate fee award, and they have the authority to modify fee requests "based on the reasonableness of the desired amount and the facts of the case." *Webster v. U.S. Dep't of Just.*, No. 02-cv-603 (RC), 2021 WL 4243414, at *8 (D.D.C. Sept. 17, 2021).  EPA raises numerous challenges to the reasonableness of EDF's fee request; the court will

13

address each in turn.  In the end, the court declines to grant EDF the full amount it seeks but does not reduce the award by as much as EPA requests.

### 1.    Appropriate Fee Matrix

The first issue raised by EPA is whether EDF calculated its fees under the appropriate matrix.  Plaintiffs must, to establish a reasonable hourly fee, "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (emphasis omitted). Fee matrices provide a "starting point for that analysis."  *Webster*, 2021 WL 4243414, at *10.  EDF calculated its requested fees using rates from the so-called "LSI Matrix."  Pl.'s Mem. at 21.  The LSI Matrix "is designed to reflect the hourly rates charged by federal court practitioners who litigate complex cases in Washington, D.C."  *Webster*, 2021 WL 4243414, at *10.  EPA contests the appropriateness of the LSI Matrix for this action.  The court agrees that EDF has not met its burden of showing that the LSI Matrix rates are reasonable for this case.

A plaintiff can justify application of the LSI Matrix in two ways.  The first way is by providing evidence that the "case falls within the bounds of complex federal litigation, a class of cases for which the LSI Matrix presumptively applies."  *Id.* at *11 (internal quotation marks and alteration omitted).   "[T]here is no presumption that FOIA cases qualify as complex federal litigation."  *Id.*  Thus, EDF must demonstrate that this particular case qualifies as complex federal litigation.  *See 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, No. 17-cv-2000 (APM), 2020 WL 7248347, at *5 (Dec. 9, 2020) (refusing to apply the LSI Matrix to a FOIA case with insufficient proof to justify its application); *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 323 (D.D.C. 2020) (same); *Barton v. U.S. Geological Surv.*, No. 17-cv-1188 (ABJ), 2019 WL

4750195, at *7 (D.D.C. Sept. 29, 2019) (same).   It has failed to do so.  This was not an unusual FOIA case.  It was not a class action on behalf of a large number of plaintiffs; it did not involve particularly voluminous or complicated factual and legal issues; it did not require plaintiffs to "conduct extensive investigation and discovery"; and it required no specialized non-legal knowledge.  *See 12 Percent Logistics*, 2020 WL 7248347, at *5 (considering "factors" for evaluating whether a case qualifies as complex federal litigation set forth in *Laffey v. Nw. Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984)).   At most, this case involved some negotiations, half-completed summary judgment briefing, and mediation.  Indeed, the only potentially complex thing EDF has identified about this case is an agency that was difficult to work with.  Agency obstinance does not, however, make a case complex.

The nine-paragraph declaration by FOIA litigator Matthew Topic that EDF submits does not alter the court's analysis.  That declaration states that, in Mr. Topic's opinion, "the rates in the [LSI] Matrix are customary and reasonable valuations for work performed in FOIA litigation in this District because they reflect the complexity of these actions and the level of expertise demanded by attorneys litigating these disputes."  Pl.'s Mot., Decl. of Matthew Topic, ECF No. 43-4 [hereinafter Topic Decl.], ¶ 9.  That assertion alone cannot support the weight of EDF's burden of justifying application of the LSI Matrix.  Mr. Topic does not explain, for example, why *this case* qualifies as complex federal litigation.

The second way a plaintiff can justify application of the LSI Matrix is by providing evidence that "litigators who brought . . . cases under the same statute received the same fees." *Webster*, 2021 WL 4243414, at *11.  EDF has not adequately made this showing.  First, the Topic Declaration states only that "[i]n [his] opinion, the rates in the [LSI] Matrix are customary," and that Mr. Topic's practice's "standard FOIA billing rates . . . exceed the [LSI] Matrix."  Topic

Decl. ¶ 9.   Mr. Topic's opinion that these rates are customary is not further fleshed out or substantiated in his declaration; the declaration attaches no survey or even any other anecdotal evidence from other practitioners.   And it is unclear whether the rates that are "standard" to Mr. Topic are standard beyond his own practice.   Based on the information provided to the court, it is quite possible—perhaps even probable—that Mr. Topic's practice's rates are on the higher end of the spectrum, based on Mr. Topic's years of experience conducting FOIA litigation and on the specialized nature of his FOIA practice.   *See id.* ¶¶ 5–6.

Second, and similarly, the declaration submitted by counsel for EDF fails to demonstrate that counsel's own firm receives LSI Matrix rates for its FOIA work.   Pl.'s Mot., Decl. of Hassan Zavareei, ECF No. 43-2 [hereinafter Zavareei Decl.], ¶¶ 27–28.   Rather, what the declaration demonstrates is that counsel's firm receives LSI Matrix–based fee awards for cases that more clearly qualify as complex federal litigation—like, for example, class actions—and not for its other FOIA work.   *Id.*; *see also id.* ¶¶ 31–33.   EDF dismisses this point, reasoning that "the firm's experience in other cases demonstrates that Mr. Zavareei is equipped to assess whether the complexity of this FOIA litigation is sufficiently comparable to the complexity of cases for which his firm received fees based on" the LSI Matrix.   Pl.'s Reply at 17.   The court does not intend to minimize or denigrate Mr. Zavareei's experience or expertise, but the case law requires a more specific showing than the conclusory statements Mr. Zavareei's declaration provides.

Mr. Zavareei does cite in his declaration two FOIA cases from within this District granting fee awards based on the LSI Matrix.   Zavareei Decl. ¶ 26.   But neither of those cases is persuasive. In the first, *Electronic Privacy Information Center v. Department of Homeland Security*, the parties "agree[d] that the LSI *Laffey* Matrix act[ed] as a starting point," and so the court "accept[ed]," without further analysis, plaintiff's hourly rates.   197 F. Supp. 3d 290, 295 (D.D.C. 2016); *see also*

16

*Barton*, 2019 WL 4750195, at *7 (declining to apply LSI Matrix where the plaintiff pointed to only two FOIA cases applying the LSI Matrix, in both of which the hourly rate was undisputed). Similarly, in the second case, the court simply assumed that the case qualified as "complex federal litigation" and instead focused on which matrix applies to such litigation. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.* (*CREW*), 80 F. Supp. 3d 1 (D.D.C. 2015). The *CREW* court's rationale has since been undercut: the opinion relied heavily on *Eley v. District of Columbia*, 999 F. Supp. 2d 137 (D.D.C. 2013), which was later vacated and remanded by the D.C. Circuit. The D.C. Circuit, in remanding the case, held that the district court had abused its discretion by failing to require an evidentiary showing that the LSI Matrix was warranted. *Eley v. District of Columbia*, 793 F.3d 97, 105 (D.C. Cir. 2015) ("[A]bsent is any record evidence, other than the fee applicant's declaration, demonstrating that IDEA litigation is as complex as the type of litigation that supports the 'enhanced' hourly rates in the LSI *Laffey* Matrix."). These two anomalous cases, when measured against the other decisions in this District refusing to apply the LSI Matrix to FOIA cases, do not suffice to persuade the court that the LSI Matrix is appropriate here.

Because EDF has not met its burden of showing that the LSI Matrix's rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Eley*, 793 F.3d at 100, the court will instead use the rates set forth in the so-called USAO Matrix. USAO Matrix rates have been "awarded to a clear majority of eligible and entitled FOIA plaintiffs in this district over the last decade," and it is "common practice" to apply them to cases like this one. *Webster*, 2021 WL 4243414, at *11 (internal quotation marks and alteration omitted).

####    2.    *Adequacy of Billing Records*

Plaintiffs must produce "contemporaneous, complete and standardized time records [that] accurately reflect the work done by each attorney." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 66 F. Supp. 3d 134, 148 (D.D.C. 2014).  According to EPA, EDF's counsel's billing records are neither contemporaneous nor sufficiently detailed.  *See* Def.'s Opp'n at 32–33.  The court disagrees.  The billing records are, as affirmed by counsel, contemporaneous records, and they specify "the date, amount of time . . . expended, and the general subject of the service provided," which is "all that is required."  *Hall v. CIA*, 115 F. Supp. 3d 24, 32 (D.D.C. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).  The court will neither "bar fees *in toto* as a sanction" nor "reduce them substantially," as EPA requests, on these grounds.  Def.'s Opp'n at 33.

####    3.    *Excessiveness of Fees*

Next, EPA asserts that the fees EDF seeks are excessive, in part because it "seeks time spent on unnecessary and nonproductive tasks" and its "time records reflect excessive amounts of time spent on tasks that should take an attorney little to minimal time."  Def.'s Opp'n at 34–35. Reviewing EDF's counsel's billing records, the court must be assured that counsel exercised good billing judgment and did not "waste or otherwise unnecessarily spend time on the matter."  *In re Donovan*, 877 F.2d 982, 990 (D.C. Cir. 1989).  "When the Government seeks to rebut . . . hours billed, it must provide just as plaintiff must provide specific evidence in his application for attorney's fees—'equally specific countervailing evidence.'"  *Piper v. U.S. Dep't of Just.,* 339 F. Supp. 2d 13, 24 (D.D.C. 2004) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.,* 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

Counsel for EDF has already excised some of the challenged time entries from its fee request.  *See* Pl.'s Reply at 22; Pl.'s Reply, Ex. 4, ECF No. 52-4 [hereinafter Billing Records with LSI Matrix Rates].  The court has reviewed the updated billing entries.  The court finds that some billing-record entries remain that reflect "excessive amounts of time spent" or "unnecessary and nonproductive tasks" and adjusts the hours for which EDF will receive compensation as follows:

| Date of Entry[1] | Description | Hours Billed | Hours Compensated in Fee Award |
|---|---|---|---|
| 2/9/2018 | Research re: prospective FOIA requests | 1.4 | 0 |
| 3/1/2018 | Prepare timeline of case; current status of reqs; binder with all docs for hrg. | 3.0 | 1.5 |
| 4/5/2018 | Research re: Millan Hupp, Safe Drinking Water Act | .4 | 0 |
| 6/5/2018 | Review articles re: recent Pruitt ethics developments | .3 | 0 |
| 6/11/2018 | Review Rep. Cummings ltr re: Pruitt | .2 | 0 |
| 7/6/2018 | Email HAZ re: Pruitt resignation | .1 | 0 |
| 10/2/2019 | Emailing w HAZ, client, D counsel/ drafting and editing consent motion to stay | 3.8 | 1.9 |
| 5/28/2020 | Saving and Circulating ECF | .5[2] | .1 |
| 9/14/2020 | Saving and Circulating ECF | .2 | .1 |

[1] The dates, descriptions, and hours billed for each of these entries are copied from the updated billing records (using the USAO Matrix rates) EDF attached to its reply.  Pl.'s Reply, Ex. 5, ECF No. 52-5.

[2] Elsewhere in the billing records, Maura Dunn billed .1 hour for "[s]aving and [c]irculating ECF."  Pl.'s Reply, Ex. 5, ECF No. 52-5.  It is not clear to the court why on May 28, 2020, saving and circulating court filings took five times as long as it did in other instances.  The court therefore reduces the billed .5 hours to .1 hours.  The same reasoning applies to the 9/14/2020 entry.

The court eliminates or adjusts the above compensation requests on the grounds that some do not adequately explain how they advanced the litigation (e.g., "[r]esearch re: prospective FOIA requests"), others are unrelated to the litigation (e.g., reviewing media relating to EPA Administrator Pruitt), and others seem excessive (e.g., time spent on email drafting and "[s]aving and [c]irculating ECF" filings).

EPA also attacks as unreasonable counsel's time spent on summary judgment briefing and mediation.  Def.'s Opp'n at 35–38.  EDF requests compensation for approximately 55 hours of work preparing its consolidated opposition to EPA's motion for summary judgment and cross-motion.  EPA argues both that, as a general matter, this is too much time spent on such a filing and that the request is particularly unreasonable in light of the fact that the pleading "was ultimately never heard on the merits."  Def.'s Opp'n at 36.  As to the latter argument, the court will not discount the time spent on summary judgment briefing simply because the court did not decide those motions.  The court must consider "[a] plaintiff's overall success on the merits . . . in determining the reasonableness of a fee award."  *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 369 (D.C. Cir. 2006).  When the litigation reached the summary judgment stage, EDF had no reason to believe the briefing schedule would be cut short as a result of EPA's discovery of unproduced records, and so EDF hardly had a choice other than to thoroughly research and prepare its summary judgment papers.  And even though summary judgment was never decided by the court, it appears under the circumstances that the completed briefing "forced the parties to exchange arguments and thus advance their debate over outstanding items," as EDF explains.  Pl.'s Reply at 23.  The completed summary judgment briefing narrowed the issues for successful resolution in mediation and so contributed to EDF's overall success on the merits.

The court agrees with EPA, however, that the hours spent on summary judgment are excessive.  EDF seeks compensation for approximately 55 hours of work on its consolidated cross-motion and opposition to EPA's motion for summary judgment.  Pl.'s Reply, Ex. 5, ECF No. 52-5 [hereinafter Billing Records with USAO Matrix Rates]; Pl.'s Reply at 23.  That filing in the main consists of a 19-page memorandum of law, which addressed four issues, including three FOIA exemptions under which EPA withheld materials, plus a short affidavit and a response to EPA's statement of undisputed material facts.  *See* Pl.'s Cross-Mot. & Opp'n; Pl.'s Cross-Mot. & Opp'n, Ex. C, ECF No. 26-3; First Levitan Decl.  The memorandum raised no novel legal questions.  In the court's view, 55 billed hours to complete a 19-page legal memorandum and other short supporting material that addressed no unusual legal issues is not reasonable.  EDF's counsel's billing records include entries for "[f]il[ing] motion for extension to file maintenance MSJ; working on plan (new MSJ)" (3 hours); "[d]rafting cross-MSJ/ opp'n to MSJ" (12.2, 11.5, 10.2, and 4.2 hours); "[i]ncorporating HAZ comments on draft cross-MSJ/ opp'n" (2.5 hours); and "[f]inalizing/ incorporating comments from client/ filing cross-MSJ/ opp'n to MSJ" (11.5 hours).  Billing Records with USAO Matrix Rates.  These hours are excessive.  In particular, the court does not understand the three hours billed to file a motion for "extension to file maintenance" or to devise a new "plan" and is skeptical that it took nearly two full working days (14 billed hours) to incorporate comments.  The 38 hours billed to draft the 19-page memorandum also seem high.  In light of these concerns, the court will reduce the compensable time spent on the cross-motion and opposition by 15%.

As for the hours spent preparing for mediation, EPA casts the approximately 23 hours counsel spent related to mediation that "did not resolve the fee issues" as excessive.  Def.'s Opp'n at 35–36.  Those 23 hours include approximately 8.6 hours participating in pre-mediation and

mediation sessions with the mediator[3]; approximately 5.2 hours engaging in other communications with the mediator[4]; and approximately 9.2 hours engaging in other preparations and mediation-related tasks,[5] including communications with defense counsel and the client.  Mediation may not have resolved the parties' fees dispute, but it did resolve the remaining disputed issues pertaining to the processing and production of responsive records.  In that sense, counsel's time spent preparing for mediation contributed to its "overall success on the merits." *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012).  That said, the time devoted to the mediation appears excessive.  Based on the generic billing entries, *see* Billing Records with USAO Matrix Rates  (e.g., "7/23/2020: Prepping for, participating in, pre-mediation; follow up emails after"; "7/26/2020: Emails w mediator re case to date"), the court cannot tell why mediation took 23 hours of work.  After carefully reviewing the mediation-related billing entries, the court will reduce the compensable mediation time by 15%.

### 4.    Fees on Fees

Finally, EPA urges denial of EDF's request for "fees on fees."  Def.'s Opp'n at 38–39.  And "[i]f this Court awards fees on fees at all," EPA maintains, "it should greatly reduce the amount well below the amount requested" because the issues in both the merits and fees litigation were straightforward and the time for which EDF requests compensation is excessive.  *Id.* at 35, 38.  But "[i]t 'is settled in this circuit' that 'hours reasonably devoted to a request for fees are compensable.'" *Jud. Watch,* 878 F. Supp. 2d at 240 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985)).  The court has reviewed counsel for EDF's

---

[3] Entries on 7/20/2020, 7/24/2020, 7/28/2020, 8/4/2020, and 9/3/2020.  Billing Records with USAO Matrix Rates.
[4] Entries on 6/30/2020, 7/2/2020, 7/7/2020, 7/8/2020, 7/14/2020, 7/18/2020, 7/20/2020, 7/2/2020, and 7/27/2020. Billing Records with USAO Matrix rates.
[5] Entries on 6/3/2020, 6/5/2020, 6/8/2020, 6/9/2020, 6/11/2020, 612/2020, 7/9/2020, 7/13/2020, 7/23/2020, 8/14/2020, and 8/31/2020.  Billing Records with USAO Matrix rates.

billing records for the fees phase of the litigation and does not find any of the claimed hours unreasonable. The court notes that, as with the summary judgment briefing, counsel incurred fees working on its fee petition and reply only because of EPA's failure to comply with FOIA. *Cf. Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 74 (D.D.C. 2013) ("If FOIA's statutory requirements as applied to this case were so 'simple' and 'straightforward,' DHS might have been better served by complying with them—rather than by ignoring statutory deadlines and meeting their legal obligations only upon being served with a complaint in federal court."); *L.A. Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055, 1061 (C.D. Cal. 2008) ("Reminding the Court of the waste of resources engendered by Defendant's failure to comply with its obligations hardly persuades the Court to reduce the fee award."). The compensation EDF seeks would not be, contrary to EPA's accusations, Def.'s Opp'n at 38, a windfall. The work for which EDF seeks compensation is of the type that FOIA's fee-shifting provision sought to incentivize in the first place.

The court therefore will not deny EDF fees on fees altogether. Instead, the court will (1) apply the hourly rates set forth in the USAO Matrix to determine the appropriate fees-on-fees award and (2) adjust that amount to the same extent it has adjusted the rest of EDF's fee award to account for EDF's degree of success in its fee petition.[6] *See 12 Percent Logistics*, 2020 WL 7248347, at *10 (taking same approach).

## VI.

For the foregoing reasons, the court grants Plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 43. The award below reflects USAO Matrix rates and the hours expended during

---

[6] The court will first calculate the rate of EDF's success in obtaining fees for the merits phase of the litigation by dividing the merits-phase fee award by the merits-phase fee request; the court will then multiply EDF's requested fees on fees by that ratio.

the merits phase of this litigation and on the instant fees petition (including the reply brief), as contained in the billing records attached to EDF's reply, discounted as indicated above. *See* Billing Records with USAO Matrix Rates.

### Table 1: Attorney's Fees[7]

|  | Fees requested using USAO Matrix | Fees awarded using USAO Matrix |
|---|---|---|
| **Merits phase of litigation** | $93,217.15 | $86,863.42[8] |
| **Fees phase** | $24,199.20 | $22,549.77 [9] |
| **Total** | $117,416.35 | **$109,413.19** |

### Table 2: Final Award

| | |
|---|---|
| **Fees** | $109,413.19 |
| **Costs** | $1,542.73 |
| **Total Award** | **$110,955.92** |

Dated:  January 13, 2022

Amit P. Mehta
United States District Court Judge

---

[7] EDF's initial request (using LSI Matrix rates) was for $119,724.90 for the merits phase of the action and $31,598 for the fees phase. Pl.'s Reply at 24–25.  The $31,598 figure represents the sum of the billing entries from 11/11/2020 onward.  *See* Billing Records with LSI Matrix Rates.  Applying the USAO Matrix rates to these same billing-record entries yields $93,217.15 for the merits phase and $24,199.20 for the fees phase.  *See* Pl.'s Reply at 25 (requesting $117,416.35 in total fees if the court applies the USAO Matrix); Billing Records with USAO Matrix Rates (showing the same billing entries using the lower USAO Matrix rates).

[8] This figure accounts for the specific reductions identified *supra* on page 19 as well as the 15% reduction of mediation- and summary judgment–related hours.

[9] As indicated *supra* in note 6, the court calculated this amount as follows: ($86,863.42 ÷ $93,217.15) × $24,199.20 = $22,549.77.